UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE JERCICH,<br><br>            Plaintiff,<br><br>    v.<br><br>COUNTY OF MERCED, JOHN HERRELL, DEIRDRE KELSEY, JOHN L. FAGUNDES, LEON MARTINEZ, WILLIAM NICHOLSEN, LEO ROBERT AYERS, AND RICHARD GRAVES; DOES 1-10,<br><br>            Defendants. | 1:06-CV-00232-OWW-DLB<br><br>**MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

## 1.   INTRODUCTION

Plaintiff George Jercich ("Jercich"), proceeding pro se, brought this action against County of Merced and various County employees ("County Defendants"), John L. Fagundes ("Fagundes"), and Robert L. Ayers ("Ayers").  County Defendants and Ayers move to dismiss the complaint under Fed. R. Civ. P. 12(b)(6).  Plaintiff has not opposed the motions.

## 2.   Procedural History

The complaint was filed on February 28, 2006.  (Doc. 1-1, Complaint for Violation of George Jercich's Civil Rights ("Complaint").)  County Defendants moved to dismiss on May 12, 2006.  (Doc. 16, Mot. to Dismiss by Defs. County of Merced, John Herrell, Deirdre Kelsey, Leon Martinez, William Nicholson, and Richard Graves ("County Defs. Mot. to Dismiss").)  Ayers moved to dismiss on May 24, 2006.  (Doc. 18-3, Mem. of Points and

1

1  Authorities in Supp. of Mot. to Dismiss by Def. Robert L. Ayers

2  ("Ayers Mot. to Dismiss").)   Fagundes does not respond to

3  Jercich's complaint.   Jercich did not file an opposition to

4  either motion to dismiss.

### 3.  Background

6       Jercich alleges that the County of Merced, several County

7  officers, including Fagundes, and Ayers, conspired to deprive

8  Jercich of equal protection under the law and to commit fraud in

9  the sale of the real property.  (Doc. 1-1, Complaint ¶¶ 11-15.)

10  Fagundes is the seller of real property to Jercich.  (*Id.* ¶ 6.)

11  Ayers is the president of TransCounty Title Company, the escrow

12  company involved in the sale.  (Doc. 18-2, Aff. of Robert L.

13  Ayers ¶¶ 2, 6.)  Jercich filed suit on February 28, 2006 against

14  County Defendants, Fagundes, and Ayers.  (Doc. 1-1, Complaint.)

15       County Defendants raised a statute of limitations defense.

16  (Doc. 16, County Defs. Mot. to Dismiss at 7-8.)  They also moved

17  for a more definite statement under Rule 12(e), contending that

18  Jercich incorrectly invokes federal jurisdictional grounds, makes

19  only conclusory allegations, and fails to allege comprehensible

20  claims.  (*Id.* at 8-9.)  Ayers moves to dismiss for lack of

21  subject-matter jurisdiction under Rule 12(b)(1).  (Doc. 18-3,

22  Ayers Mot. to Dismiss at 2.)  Ayers alternatively moves to

23  dismiss pursuant to Rule 12(b)(7), failure to join an

24  indispensible party under Rule 19, although he does not identify

25  the absent party.  (*Id.*)  County Defendants and Ayers both move

26  to dismiss the complaint for improper service of process, failure

27  to comply with Rule 8, and failure to state a claim for relief as

28  a § 1983 action.  (Doc. 16, County Defs. Mot. to Dismiss at 2;

**2**

1  Doc. 18-3, Ayers Mot. to Dismiss at 2.)

2  ### 4.  **Factual History**

3      Fagundes originally owned 260 acres of land.  (Doc. 1-1,

4  Complaint ¶ 14.)  In 1996, the County permitted Fagundes to

5  subdivide his land into three parcels, one of which, 46 acres,

6  was purchased by Jercich.  (*Id.*)  Prior to Fagundes' ownership,

7  Jercich claims that Jercich's property had been "illegally

8  backfilled under a permit issued by [Merced County] between 1969

9  and 1971."  (*Id.*)  Plaintiff claims reasonable inspection of the

10 property did not reveal this backfilling until thirty-one to

11 thirty-four years later.  (*Id.*)  Fagundes described the property

12 as a "residential parcel."  (*Id.*)  Jercich claims that much of

13 his property is "unbuildable . . . without significant additional

14 expenditures."  (*Id.*)

15     In "late 2002," Jercich purchased from Fagundes the forty-

16 six acre property located at 7800 Merced Falls Road.  (Doc. 1-1,

17 Complaint ¶ 12.)  Jercich and Fagundes met Ayers during the

18 escrow proceedings.  (*Id.*)  Ayers is the president of TransCounty

19 Title Co., a privately-owned escrow company.  (*See* Doc. 18-2,

20 Aff. of Robert L. Ayers ¶¶ 2, 5, and 6.)

21     Some unspecified time afterwards, John Herrell ("Herrell"),

22 deputy environmental health officer of Merced County, and Richard

23 Graves ("Graves"), deputy building officer for Merced County

24 Building Department, cited Jercich for various code violations.

25 (Doc. 1-1, Complaint ¶ 4, 10, 13.)  The violations included piles

26 of "tires, wheels and other refuse" as well as Jercich's lack of

27 a Certificate of Occupancy to live in his mobile home.  (*Id.* ¶

28 13.)  Jercich explained that he was "compelled" to live there

**3**

because he was "robbed of significant personalty."  (*Id.*)

Jercich alleges that Graves and Herrell, his neighbors, engaged

in numerous violations themselves, yet the County did not enforce

land use regulations against them.[1]  (*Id.*)  In July of 2005,

while hurrying to meet a deadline to dispose of his refuse,

Jercich claims he was nearly "crushed to death" by a tractor.

(*Id.*)  As a result, he allegedly suffers from intense pain and is

heavily medicated just to function at 60% of his pre-accident

capability.  (*Id.*)

At another unspecified time, Deirdre Kelsey ("Kelsey"), a

County Supervisor, met with Leon Martinez ("Martinez"), former

Chief Code Enforcement Officer of Merced County's Planning

Department. (Doc. 1-1, Complaint ¶ 5, 7.)  Jercich alleges they

prevented him from subdividing his property.  (*Id.* ¶ 15.)  Prior

to this, Kelsey's husband had sought to purchase a quantity of

"saleable rock" from Jercich.  (*Id.* ¶ 15.)  Jercich refused

because the offer was much less than the rock's supposed worth.

(*Id.*)  In retaliation, Jercich claims that Kelsey acted to "make

certain [Jercich] could not subdivide his property" by "working

behind the scenes" to influence the Board's vote on his proposed

subdivision.  (*Id.*)  Kelsey recused herself from the Board vote,

an act that Jercich labeled "specious."  (*Id.*)  Jercich had

allegedly worked on his land for two years and had spent $12,000

in anticipation of receiving approval of his proposed

subdivision.  (*Id.*)  Because his subdivision failed, Jercich

---

[1] Examples of violations included illegal mobile home dwellings, illegal wood-burning stove, and "much more egregious piles of junk and tires" on their land.  (Complaint ¶ 13.)

**4**

claims to have lost a pending business offer of $250,000 for 12 acres of his land.  (*Id.*)  He claims this lost opportunity caused him to file bankruptcy.  (*Id.*)

Jercich seeks $1,000,000 in damages and "further relief as is just."  (*Id.* ¶ 17.)  Jercich throughout his complaint makes conclusory statements as to the existence of conspiracies to deprive him of his civil rights and to defraud him.  He does not state facts concerning the emotional distress he suffered.

Jercich alleges a civil rights violation for deprivation of his "equal protection under the law." (Doc. 1-1, Complaint ¶ 13.)  Defendants assume arguendo that Jercich's claim is for violation of his civil rights under § 1983.[2]  (*See* Doc. 16, County Defs. Mot. to Dismiss at 7; Doc. 18-3, Ayers Mot. to Dismiss at 3.)

Jercich served County Defendants by mail using a private process server.  (*See* Docs. 5-8 & 10-11, Summons on County Defs. at 2.)  The summons and complaint were sent by first Class U.S. Mail to 2222 M St., Merced, CA.  (*Id.*)  Whose address this is, is unknown.  Jercich served Ayers by first class mail to Ayers' workplace.  (*See* Doc. 12, Summons on Ayers at 2) (sent by First Class U.S. Mail to TransCounty, 633 W. 19th St., Merced, CA).  Jercich did not seek waiver of service or provide acknowledgment or receipt of the mailed summons and complaint.

## 5.  **Analysis**

---

[2] 42 U.S.C. § 1983 (2000) (Civil Action for Deprivation of Rights).  For a successful § 1983 action, the conduct must be under color of state law, and the conduct must result in the denial of constitutional rights. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986).

1    In deciding whether to grant a motion to dismiss, the court

2    "accept[s] all factual allegations of the complaint as true and

3    draw[s] all reasonable inferences" in the light most favorable to

4    the nonmoving party.  *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th

5    Cir. 1999); *see also Rodriguez v. Panayiotou*, 314 F.3d 979, 983

6    (9th Cir. 2002).  A court is not "required to accept as true

7    allegations that are merely conclusory, unwarranted deductions of

8    fact, or unreasonable inferences."  *Sprewell v. Golden State*

9    *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

10    In general, "a *pro se* complaint will be liberally construed

11    and will be dismissed only if it appears beyond doubt that the

12    plaintiff can prove no set of facts in support of his claim which

13    would entitle him to relief."  *Pena v. Gardner*, 976 F.2d 469, 471

14    (9th Cir. 1992).  However, "a liberal interpretation of a [pro

15    se] complaint may not supply essential elements of the claim that

16    were not initially pled."  *Id*.

17                        **6.  Federal Claims**

18    **A.   Federal Subject-Matter Jurisdiction**

19    A federal court has jurisdiction under 28 U.S.C. § 1331 when

20    a "well-pleaded complaint" shows that federal law created the

21    claim or that the plaintiff's relief depends on "a substantial

22    question of federal law."[3]  *Empire Health Choice Assur., Inc. v.*

23    *McVeigh*, 126 S. Ct. 2121, 2131 (2006).  A well-pled complaint

24    means that the federal question must be apparent on the face of

25    the complaint.  *See Cal. ex. rel. Lockyer v. Dynegy, Inc.*, 375

26

27      [3] "District courts shall have original jurisdiction of all civil actions
      arising under the Constitution, laws, or treaties of the United States."  28
28    U.S.C. § 1331 (2005). Diversity jurisdiction is not invoked.

**6**

F.3d 831, 838 (9th Cir. 2004); *see also Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127-28 (1974).

Parties can raise challenges to federal subject-matter jurisdiction as provided by a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction. Even in the absence of a party challenge, federal courts have an obligation to determine whether subject-matter jurisdiction exists. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). A federal question claim is properly dismissed for lack of subject-matter jurisdiction if it is "immaterial and solely for the purpose of obtaining federal jurisdiction" or "wholly insubstantial and frivolous." *Arbaugh v. Y & H Corp.*, 126 S. Ct. 1235, 1244 n.10 (2006) (citations omitted).

### 1. Ayers' Motion to Dismiss for Lack of Subject-Matter Jurisdiction

Jercich's allegations of an equal protection violation, as well as his filing suit in federal court, suggest that he brings suit under § 1983, which if applicable would satisfy federal-question jurisdiction under 28 U.S.C. §§ 1331 and 1334. Ayers moves to dismiss for lack of subject-matter jurisdiction. Ayers correctly argues that Jercich does not identify facts supporting federal subject-matter jurisdiction.[4] Ayers disputes federal jurisdiction, as no conduct under color of state law is alleged.

---

[4] Jercich erroneously brings his complaint under California Government Code Title 1, Division 3.6, entitled "Claims and Actions Against Public Employees and Public Entities." (Doc. 1-1, Complaint.) He cites 28 U.S.C. § 157(b)(2)(1), a nonexistent section, for federal subject-matter jurisdiction. *Id.* Title 28 U.S.C. § 157(b)(1) provides for what sort of cases and "core proceedings" a *bankruptcy* judge may hear. Section 157(b)(2) provides the definition of "core proceedings." Neither of these sections gives jurisdiction in this matter.

1  *Parratt*, 451 U.S. at 535.  He contends Jercich's complaint does
2  not allege Ayers is a state actor.

3     Ayers conflates federal subject-matter jurisdiction with a
4  plaintiff's need to prove the defendant liable under federal law,
5  a "merit-based determination."  *See Arbaugh*, 126 S. Ct. at 1242
6  (citations omitted).  Jercich's complaint on its face claims an
7  equal protection deprivation by County Defendants and Ayers
8  acting in concert in their alleged selective prosecution of
9  Jercich's code violations and the denial of his subdivision plan
10 to deprive him 14th Amendment of his due process right to
11 enjoying free ownership and use of his real property by virtue of
12 his differential treatment from others similarly situated.  This
13 is sufficient to invoke federal subject-matter jurisdiction to
14 hear this claim pursuant to § 1331.  Whether these allegations
15 sufficiently state a claim is a separate issue.  Ayers' motion to
16 dismiss pursuant to Rule 12(b)(1) is **DENIED**.

17 **B.   Service of Process**

18    Jercich does not state whether he sues County Defendants and
19 Ayers in their official and/or individual capacity.  Both are
20 assumed.

21    Rule 4 of the Federal Rules of Civil Procedure governs
22 service of process.  Plaintiff must cause a copy of the summons
23 and the complaint to be delivered to the defendants.  Fed. R.
24 Civ. P. 4(c)(1).  Rule 4(e) pertains to service on individuals
25 and states in relevant part:

26              Unless otherwise provided by federal law,
             service upon an individual from whom a waiver
27           has not been obtained and filed . . . may be
             effected in any judicial district of the
28           United States:

**8**

(1)     pursuant to the law of the state in
        which the district court is located, or
        in which service is effected, for the
        service of a summons upon the defendant
        in an action brought in the courts of
        general jurisdiction of the State; or

(2)     by delivering a copy of the summons and
        of the complaint to the individual
        personally or by leaving copies thereof
        at the individual's dwelling house or
        usual place of abode with some person of
        suitable age and discretion then
        residing therein or by delivering a copy
        of the summons and of the complaint to
        an agent authorized by appointment or by
        law to receive service of process.

Fed. R. Civ. P. 4(e).

Rule 4(j)(2) pertains to service on municipal governments and states in relevant part:

        Service upon a state, municipal corporation,
        or other governmental organization subject to
        suit, shall be effected by delivering a copy
        of the summons and of the complaint to its
        chief executive officer or by serving the
        summons and complaint in the manner
        prescribed by the law of that state for the
        service of summons or other like process upon
        any such defendant.

Fed. R. Civ. P. 4(j)(2).  If service is not waived, proof of service shall be made by affidavit by the person effecting service if that person is not a U.S. marshal.  *Id.* 4(l).  Failure to prove service does not affect the validity of service.  *Id.*

Proper service of process is required for federal courts to obtain personal jurisdiction over a defendant.  *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1177 (9th Cir. 2004); *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986).  Unless there is "substantial compliance with Rule 4," actual notice alone will not suffice to establish personal jurisdiction. *Cranford v. United States*, 359 F. Supp. 2d 981, 983-84 (E.D. Cal.

**9**

2005) (*citing Benny*, 799 F.2d at 492).  Rule 4 should be liberally construed as long as there is "sufficient notice of the complaint."  *United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984); *Cranford*, 359 F. Supp. 2d at 983.

Under the sufficient notice exception, failure to personally serve does not result in dismissal of the complaint if (a) the party to be served personally received actual notice, (b) the defendant suffers no prejudice from the service defect, and (c) the plaintiff would be severely prejudiced if his complaint were dismissed.  *Oyama v. Sheehan (In re Sheehan)*, 253 F.3d 507, 512 (9th Cir. 2001); *accord Cranford*, 359 F. Supp. 2d at 985.  If a plaintiff falls within the sufficient notice exception, he has "substantially complied" with Rule 4.  *Borzeka v. Heckler*, 739 F.2d 444, 447 n.1 (9th Cir. 1984).  Service at a person's place of employment is generally insufficient if the claim is against a defendant in his individual capacity alone.  *Daly-Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1987).

County Defendants and Ayers move to dismiss for improper service pursuant to Rule 12(b)(5) because Jercich did not personally effect service on the Defendants pursuant to Rule 4.

**1.   Individual Service of Process**

If a plaintiff does not seek a waiver of service, Rule 4(e) of the Federal Rules of Civil Procedure requires that a complaint be personally served on individual defendants.  The rule lists five ways in which service is effected:

> (1)   pursuant to the law of the state in
>       which the district court is located;

**10**

(2) Or pursuant to the law of the state in which service is effected;

(3) delivering a copy of the summons and of the complaint to the individual personally;

(4) leaving copies of the summons and complaint with some person of suitable age residing at the individual's dwelling house or usual place of abode; or

(5) delivering a copy to an agent authorized to receive service of process.

Fed. R. Civ. P. 4(e).

The facts do not show that Jercich personally delivered the summons to the Defendants, nor left the summons with a responsible person at their abodes.  However, Rule 4(e) provides other means to effect service, the most relevant of which is pursuant to California law, the state in which the district court is located and service is to be affected.

**a.   Rule 4(e) and Pursuant to the Law of the State**

Under California law, service on an individual may be effected by delivering a copy to the individual or an authorized agent.  Cal. Civ. Proc. Code § 416.90 (Deering 2006).  California law provides for three means to effect service:

(1) Personally delivering to the individual or someone authorized to receive service (the agent).  *Id.* § 415.10.

(2) Leaving a copy of the summons and complaint with a responsible person at the individual's (or agent's) usual home, office, place of abode, or mailing address and afterward mailing a copy to the individual (or agent) at such home, office, place of abode, or mailing address.  *Id.* § 415.20(b).

(3) Mailing a copy to the individual (or agent) with notice and acknowledgment

11

1    form.[5]  *Id.* § 415.30.

2        Jercich used service by mail.  The facts fail to show

3    whether the person who effected service for Jercich is legally

4    authorized to do so.  *See* Fed. R. Civ. P. 4(c)(2) (service

5    effected by anyone who is not a party and at least 18 years of

6    age).  To serve the County Defendants, Jercich's process server

7    mailed the summons and complaint to 2222 M Street, Merced, CA.

8    It is unclear if this is the address of an authorized agent to

9    receive service of process for County Defendants.  The facts also

10   fail to show whether an acknowledgement form was sent with the

11   copy of the summons and complaint as required by California Civil

12   Procedure Code Section 415.30.

13       When serving Ayers, Jercich's process server sent the

14   service by mail to TransCounty Title Company, a private company,

15   Ayers' place of business.  It is unclear if the process server

16   included an acknowledgment of service form as required by law.

17   Jercich's claim against Ayers is in reference to his individual

18   and official capacity as the president of TransCounty.  It cannot

19   be determined on this record if Jercich complied with all the

20   requirements of Section 415.30.  Jercich has failed to provide

21   evidence of proper service.  Ayers' motion to dismiss the

22   complaint for insufficient service of process is **GRANTED WITH**

23

24       [5] Service by mail requires that a copy of the summons and complaint be
25   sent by first-class mail to the person to be served, with two copies of the
     notice and acknowledgment of receipt, and a pre-paid return envelope,
26   addressed to sender.  Cal. Civ. Proc. Code § 415.30(a) (Deering 2006).
     Service is complete when acknowledgment of receipt of summons is executed and
27   returned to sender.  *Id.* § 415.30(c).  If the person who is served by this
     means refuses to complete and return the acknowledgment form within 20 days
28   from the date of mailing, this person is liable for the extra costs of service
     by another method.  *Id.* § 415.30(d).

**12**

LEAVE TO AMEND.

    **2.   Service of Process on Merced County**

    Rule 4(j)(2) governs service on a public entity municipality.  Service is effected by (1) delivering a copy of the summons and complaint to the public entity's chief executive officer or (2) service pursuant to the law of the state.  Fed. R. Civ. P. 4(j)(2).

    Under California law, service is effected on a municipality by delivery of summons and complaint to the "clerk, secretary, president, presiding officer, or other head of its body."  Cal. Civ. Proc. Code § 416.50 (Deering 2006).  Service is proper when:

        (1)   The summons is personally served.  *Id.* § 415.10;

        (2)   The summons is left "during usual office hours in his or her office . . . with the person who is apparently in charge . . . thereafter mailing a copy of the summons and complaint."  *Id.* § 415.20(a); or

        (3)   The summons is sent by first-class mail to the designated individual, pursuant to California Civil Procedure Code Section 415.30.

    The facts fail to show whether or not Jercich's process server mailed Jercich's summons to the correct person or address. It is unknown if she sent an acknowledgment form in compliance with Section 415.30.  Defendant Merced County's motion to dismiss for insufficient service of process is **GRANTED WITH LEAVE TO AMEND.**

**C.   Motion for More Definite Statement Pursuant to Fed. R. Civ. P. 12(e)**

    A motion for more definite statement attacks an

**13**

unintelligible complaint, not a complaint that lacks detail. *Neveau v. City of Fresno*, 392 F. Supp. 2d 1159, 1169 (E.D. Cal. 2005).  Courts will deny the motion if the complaint is specific enough to give notice to the defendants of the substance of the claim asserted.  *See id.*; *Beery v. Hitachi Home Elecs. (Am.)*, 157 F.R.D. 477, 480 (C.D. Cal. 1993).  A 12(e) motion is proper only if the complaint is "so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself."  *Cellars v. Pac. Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D. Cal. 1999); *see Bautista v. L.A. County*, 216 F.3d 837, 843 n.1 (9th Cir. 2000) (Reinhardt, J., concurring) (party can move for more definite statement on those rare occasions where a complaint is so vague or ambiguous that party cannot reasonably frame a responsive pleading); *see also Sagan v. Apple Computer*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994).

Rule 12(e) motions "should not be used to test an opponent's case by requiring him to allege certain facts or retreat from his allegations."  *Neveau*, 392 F. Supp. 2d at 1169 (*citing Palm Springs Med. Clinic, Inc. v. Desert Hosp.*, 628 F. Supp. 454, 464-65 (C.D. Cal. 1986)).  If the facts sought by a motion for a more definite statement are obtainable by discovery, the motion should be denied.  *See McHenry v. Renne*, 84 F.3d 1172, 1176 (9th Cir. 1996) (granting 12(e) motion if complaint does not provide defendants "a fair opportunity to frame a responsive pleading"); *see also Neveau*, 392 F. Supp. 2d at 1169-70 (12(e) motion should be denied if discovery can obtain the desired facts); *Sagan*, 874 F. Supp. at 1077 ("Parties are expected to use discovery, not the

**14**

1  pleadings, to learn the specifics of the claims being asserted");

2  *Beery*, 157 F.R.D. at 180 (finding a 12(e) motion should be denied

3  if detail sought is obtainable through discovery).

4      A Rule 12(e) motion is considered in light of Rule 8's

5  liberal pleading standards.  *See, e.g.*, *Bureerong v. Uvawas*, 922

6  F. Supp. 1450, 1461 (C.D. Cal. 1996) (*citing Sagan*, 874 F. Supp.

7  at 1077).  Rule 8(a)(2) of the Federal Rules of Civil Procedure

8  only requires "a short and plain statement of the claim"

9  sufficient to give the defendant fair notice of what the

10  plaintiff's claim is and on what grounds it rests.  *Swierkiewicz*

11  *v. Sorema N.A.*, 534 U.S. 506, 512 (U.S. 2002) (*citing Conley v.*

12  *Gibson*, 355 U.S. 41, 47-48 (U.S. 1957)).  Because of the minimal

13  federal pleading requirements, 12(e) motions are viewed with

14  disfavor.  *Sagan*, 874 F. Supp. at 1077.  A motion for more

15  definite statement is more likely granted when there is ambiguity

16  as to the nature of the claim or the party claimed against.  *Id.*

17  Unlike pleadings drafted by lawyers, pleadings by pro se

18  plaintiffs are liberally construed.  *See Hearns v. Terhune*, 413

19  F.3d 1036, 1040 (9th Cir. 2005) (*citing Hughes v. Rowe*, 449 U.S.

20  5, 9 (1980)); Analysis, *infra*.

21      County Defendants bring a 12(e) motion for more definite

22  statement as an alternative to their 12(b)(6) motion.  They

23  contend that Jercich makes only conclusory allegations and that

24  his complaint is so poorly written they do not know what he is

25  claiming.

26      Jercich makes several claims.  He raises general allegations

27  of a civil right deprivation, which implicate § 1983.  He

28  contends his civil rights were violated by the County's selective

**15**

prosecution in its enforcement of land use violations.  He makes

conclusory allegations that Defendants Fagundes, Herrell, Graves,

and others are responsible for these deprivations.  Jercich also

contends that Kelsey and Martinez conspired to deny approval of

his subdivision, denying him Equal Protection under the law,

without providing any grounds for claim.  Likewise, Jercich

alleges that Ayers, Fagundes, and other Defendants named in the

complaint sought to defraud him through their "speech, acts and

omissions."  Such conclusory statements, fail to give Defendants

fair notice of Jercich's claims.  Motion for more definite

statement is **GRANTED WITH LEAVE TO AMEND.**[6]

**D.   <u>Motion to Dismiss for Failure to Join a Party</u>**

Rule 12(b)(7) is a motion to dismiss for failure to join a

party pursuant to Rule 19.  Rule 19 governs compulsory joinder of

parties.  Fed. R. Civ. P. 19.  In relevant part, Rule 19(a)

provides that

> [a] person who is subject to service of
> process and whose joinder will not deprive
> the court of jurisdiction over the subject-
> matter of the action shall be joined as a
> party in the action if
>
> (1)   in the person's absence complete relief
>        cannot be accorded among those already
>        parties, or
>
> (2)   the person claims an interest relating
>        to the subject of the action and is so
>        situated that the disposition of the
>        action in the person's absence may
>        (i)   as a practical matter impair or
>               impede the person's ability to
>               protect that interest or
>        (ii) leave any of the persons already

---

[6] Similarly, Defendants' motion that Plaintiff violates Rule 8(e)(1), which directs a claim be short, concise, and direct, is GRANTED WITH LEAVE TO AMEND.

parties subject to a substantial
risk of incurring double, multiple,
or otherwise inconsistent
obligations by reason of the
claimed interest . . .

> If the joined party objects to venue and
> joinder of that party would render the venue
> of the action improper, that party shall be
> dismissed from the action.

There is a three-step process to determine whether Rule 19 applies:

> (1)  Is the nonparty necessary, as described
> in Rule 19(a)?  *See EEOC v. Peabody W.*
> *Coal Co.*, 400 F.3d 774, 779 (9th Cir.
> 2005) (*citing United States v. Bowen*,
> 172 F.3d 682, 688 (9th Cir. 1999)).

> (2)  If the absent party is necessary, is
> joinder feasible?  *See* Fed. R. Civ. P.
> 19(a) (joinder unfeasible if improper
> venue, nonparty not subject to personal
> jurisdiction, or joinder would destroy
> subject-matter jurisdiction); *Peabody W.*
> *Coal Co.*, 400 F.3d at 779.

> (3)  If joinder is not feasible, is the
> absent party indispensable?  *See* Fed. R.
> Civ. P. 19(b); *Bowen*, 172 F.3d at 688
> ("whether 'in equity and good
> conscience' the action can continue
> without the party").

Ayers moves to dismiss pursuant to Rule 12(b)(7).  However, he fails to identify the absent necessary party who must be joined under Rule 19.  The purpose of Rule 19 is to "consummate . . . relief as to those already parties, and with precluding multiple lawsuits on the same cause of action." *Peabody W. Coal Co.*, 400 F.3d at 780 (citations omitted).  As Ayers is already a party to this action, Rule 19 does not apply to him.  The Motion to dismiss for failure to join a necessary party pursuant to Rule 12(b)(7) is **DENIED**.

//

**E.    12(b)(6) Motion to Dismiss**

Fed. R. Civ. P. 12(b)(6) provides that a motion to dismiss may be made if the plaintiff fails "to state a claim upon which relief can be granted."  The question is not whether the plaintiff will ultimately prevail; rather, whether the plaintiff could prove any set of facts in support of his claim that would entitle him to relief. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  "A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Van Buskirk v. CNN, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (citations omitted).

**1.    1983 Action**

To establish liability under § 1983, a plaintiff must show 1) that he has been deprived of a right secured by the United States Constitution or a federal law and 2) that the deprivation was effected "under color of state law." *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).  Ayers contends that he did not act under color of state law.  County Defendants contend that selective prosecution is not an actionable claim under 1983.

**a.    Deprivation of a Secured Right**

Equal Protection is a right secured by the United States Constitution. *See, e.g., Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (Equal Protection clause intended to protect every person within a state from intentional and arbitrary discrimination).  Jercich claims that his Equal Protection right is being deprived by the County, implicating the first prong of a § 1983 action.

**18**

1    An Equal Protection claim is usually brought because of an

2  irrational law or by a member of a protected class.  *See Esmail*

3  *v. McCrane*, 53 F.3d 176, 178 (7th Cir. 1995).  Where state action

4  does not affect a fundamental right or protected classification,

5  plaintiffs can establish an Equal Protection claim as a "class of

6  one".  *See Vill. of Willowbrook*, 528 U.S. at 564.  For a

7  successful Equal Protection action under § 1983, "class of one,"

8  a plaintiff must still show he was 1)intentionally treated

9  differently from others similarly situated and 2) there is no

10  rational basis for the different treatment.  *Id.*; *see also Squaw*

11  *Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 943-44 (9th Cir. 2004)

12  (1983 action brought by "class of one" plaintiff for Equal

13  Protection violation).

14    In order to survive the rational basis test, government

15  actions must implicate legitimate goals and the means chosen must

16  bear a rational relationship to those goals.  *See, e.g., Lyng v.*

17  *Int'l Union*, 485 U.S. 360, 375 (1988).  Under the rational basis

18  test, there is a strong presumption of validity; government

19  actions are valid so long as there is a legitimate government

20  interest.  *See Tucson Woman's Clinic v. Eden*, 371 F.3d 1173, 1185

21  (9th Cir. 2004); *McLean v. Crabtree*, 173 F.3d 1176, 1186 (9th

22  Cir. 1999).  There is no rational basis for state conduct that is

23  clearly "malicious, irrational, or plainly arbitrary."  *Squaw*

24  *Valley Dev. Co.*, 375 F.3d at 944 (citation omitted).  Jercich

25  does not allege entitlement to protection as a protected class.

26  //

27  //

28  //

**19**

1

2

### I.   Selective Prosecution through Code Enforcement

Jercich alleges a deprivation of his Equal Protection right to use and enjoy his real property for development by the County's enforcement of code violations against him and not his neighbors.  County Defendants move to dismiss, arguing that selective prosecution is not a cognizable claim under § 1983, *citing Esmail v. McCrane*, 53 F.3d 176, 178-79 (7th Cir. 1995) (stating that failure to prosecute all known lawbreakers is not actionable under Equal Protection).  See also *Wayte v. United States*, 470 U.S. 598, 608 (1985) ("Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement . . . and may undermine prosecutorial effectiveness.").

County Defendants misinterpret the law.  Selective prosecution is limited by constitutional restraints.  *Wayte*, 470 U.S. at 608.  The law in the Ninth Circuit recognizes selective prosecution as a viable basis for a 1983 action.  *See, e.g.*, *Squaw Valley Dev. Co.*, 375 F.3d at 944; *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995).  Selective prosecution is judged according to ordinary standards of Equal Protection:  Plaintiff must show that 1) others similarly situated have not been prosecuted and that 2) the prosecution has an impermissible motive.  *Freeman*, 68 F.3d at 1187; *see also Squaw Valley Dev. Co.*, 375 F.3d at 944 (to satisfy the second prong, selective prosecution claim by "class of one" plaintiff requires showing of irrationality in the challenged conduct).  "Selective enforcement of valid laws, without more, does not make the defendants'

**20**

1   actions irrational." *Freeman*, 68 F.3d at 1188.

2   Jercich does satisfy the first prong: he claims his
3   neighbors have not been prosecuted for similar violations, but
4   alleges no facts to show they are similarly situated.  He does
5   not satisfy the second prong because he does not plead an
6   irrational basis for this alleged differential treatment, other
7   than conclusory conspiracy statements.  Though not explicitly
8   stated by the County Defendants, the County has a legitimate
9   interest in enforcement of code violations and land use laws
10  against Jercich.  Jercich can dispute this by showing that such
11  rational basis is a pretext for an "impermissible motive." *Squaw*
12  *Valley Dev. Co.*, 375 F.3d at 944 (internal citations omitted).
13  He alleges motive.

14  In *Squaw Valley*, an executive officer of a water regulation
15  board enforced water code violations against a ski resort.  The
16  plaintiff ski resort argued it was 1) subjected to more
17  regulations than neighboring resorts, 2) had a higher standard of
18  regulation than its neighbors, and 3) had every violation
19  enforced against it while substantial violations by its neighbors
20  were not enforced.  *Id.* at 945.  These reasons, however, had a
21  rational basis: the ski resort had resisted lesser regulatory
22  efforts and had a history of non-compliance.  *Id.*

23  The Ninth Circuit found other allegations that indicated the
24  rational basis was pretextual.  The officer had a long history of
25  disputes with the ski resort management, and was verbally
26  aggressive with them.  *Id.* at 946.  The neighboring resorts
27  commented on the obviousness of the selective treatment by the
28  officer.  *Id.*  Despite stating the resort's history of non-

**21**

compliance as the reason for the disparate treatment, the officer could not name a single instance of non-compliance. *Id.* The court held that the ski resort successfully raised triable issues of fact about the executive officer's animus against the resort. *Id.* at 947.

Jercich's complaint does not allege an irrational motive or animus, other than conclusory conspiracy claims. Though Jercich alleges selective enforcement, the County Defendants had a rational basis for their actions: he was in violation of various codes. Unlike *Squaw Valley*, the facts do not show a history of conflict between Jercich and the County Defendants for these code violations or the operation of his real property. The facts do not show any evidence of personal animosity between the County Defendants and Jercich. The, motion to dismiss for failure to state a claim for an equal protection § 1983 action is **GRANTED WITH LEAVE TO AMEND.**

## II.  Denial of Subdivision by Kelsey and Martinez

Jercich claims that the denial of his subdivision application resulted in a deprivation of his constitutional rights. He alleges that Kelsey, a County Supervisor, and Martinez, the Chief Code Enforcement Officer, conspired behind the scenes to do so. However, Jercich does not allege a constitutional deprivation by either Kelsey or Martinez or their unlawful purpose.

To establish an Equal Protection violation, Jercich must allege that he was intentionally treated differently from others similarly situated and that there was no rational basis for this

**22**

difference in treatment.  *Squaw Valley Dev. Co.*, 375 F.3d at 944.
Jercich fails to allege or identify others similarly situated who
were treated differently than him, i.e., people with various code
violations whose similar subdivision applications were approved.

Jercich acknowledges that Kelsey did not participate in the
vote that denied his subdivision.  Martinez is not a Supervisor
so he did not vote.  Even if Jercich was treated differently from
others similarly situated, there is a rational basis for Kelsey
not voting: her husband had prior dealings with Jercich. (Doc. 1-
1, Complaint ¶ 15).  To mitigate any claims of impropriety,
Kelsey recused herself.  The facts do not show how either Kelsey
or Martinez exercised their authority as County officials to deny
Jercich his subdivision in an unconstitutional manner.  The
denial of his subdivision approval is not actionable under § 1983
on the facts alleged.  Nor are any facts stated that would show a
basis for liability on the part of Kelsey or Martinez.

### b.   Under Color of State Law

To act under color of state law requires that the defendant
in a § 1983 action has exercised power "possessed by virtue of
state law and made possible only because the wrongdoer is clothed
with the authority of state law." *West v. Atkins*, 487 U.S. 42,
49 (1988) (quoting *United States v. Classic,* 313 U.S. 299, 326
(1941)).  *Id.*  If defendant's conduct satisfies the state action
requirement of the Fourteenth Amendment, "that conduct [is] also
action under color of state law and will support a suit under §
1983." *Id.*  In such circumstances, defendant's alleged
infringement of plaintiff's federal rights is "fairly
attributable to the State."  *Id.*

1    To constitute state action, the deprivation must be caused

2   by the exercise of some right or privilege created by the State

3   or by a person for whom the State is responsible, and the party

4   charged with the deprivation must be a person who may fairly be

5   said to be a state actor. *Id.*; *see also Am. Mfrs. Mut. Ins. Co.*

6   *v. Sullivan*, 526 U.S. 40, 50 (1999).  It is firmly established

7   that a defendant in a § 1983 suit acts under color of state law

8   when he abuses the position given to him by the State. *Atkins*,

9   487 U.S. at 49.  Generally, a public employee acts under color of

10  state law while acting in his official capacity or while

11  exercising his responsibilities pursuant to state law. *Id.*

12                **I.   Suit Against Ayers As Private Individual**

13   The United States Supreme Court has held an individual's

14  conduct is equivalent to government action if there is a nexus

15  between the State and the action such that "seemingly private

16  behavior may be fairly treated as that of the State itself."

17  *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S.

18  288, 295 (2001) (citation omitted).  The Supreme Court has

19  identified four factors that influence a finding of state action

20  by a private individual:

21          (1)   The government compelled the action
                  using its coercive power, or significant
22                overt or covert encouragement. *Single
                  Moms, Inc. v. Mont. Power Co.*, 331 F.3d
23                743, 747 (9th Cir. 2003) (*citing Blum v.
                  Yaretsky*, 457 U.S. 991, 1004 (1982));
24
          (2)   The government and the private actor
25                wilfully participated in joint activity.
                  *Id.* (*citing Lugar v. Edmondson Oil Co.*,
26                457 U.S. 922, 936 (1982));

27          (3)   The government controlled a nominally
                  private actor.  *Id.* (*citing Pennsylvania
28                v. Bd. of Dir. of City Trusts*, 353 U.S.

                              **24**

1    230, 231 (1957)); or

2         (4)   The government delegated a public
             function to the private actor.  *Id.*
3             (*citing Atkins*, 487 U.S. at 56).

4   See also *Kirtley v. Rainey*, 326 F.3d 1088, 1094-95 (9th Cir.

5   2003) (replacing the nominally private actor factor with the

6   *Brentwood* nexus factor: seemingly private behavior that may be

7   fairly considered state action).

8        Of these four factors, Jercich's complaint refers to the

9   second, willful participation in a joint activity by the

10  government and the private actor.  Jercich does not provide facts

11  to show where there was joint activity.  Under the joint action

12  test, a plaintiff must show that the state "has so far insinuated

13  itself into a position of interdependence with the private

14  entity" that the act must be recognized as a joint activity.  *See*

15  *Kirtley*, 326 F.3d at 1093 (citation omitted).  A plaintiff may

16  demonstrate interdependence by showing a conspiracy or wilful

17  participation by the private entity and the state.  *See Franklin*

18  *v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002).  Courts generally

19  require a substantial degree of cooperation before imposing

20  liability on private actors.  *Id.*

21       Jercich's complaint does not state a § 1983 action against

22  Ayers.  Jercich does not provide facts that show joint action

23  between County Defendants and Ayers to deprive him of

24  constitutional rights.  He fails to allege a "substantial degree

25  of cooperation" between Ayers and County Defendants.  There are

26  no facts to support a finding that the County acted

27  interdependently in Ayers' activities.  Ayers' motion to dismiss

28  pursuant to 12(b)(6) with regards to a 1983 action is **GRANTED**

**25**

**WITH LEAVE TO AMEND.**

## II.   Suit Against Merced County As Local Government

Local governments are persons subject to suit for constitutional torts under a 1983 action.  *Haugen v. Brosseau*, 339 F.3d 857, 874 (9th Cir. 2003) (*citing Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)).  Local governments can be sued for monetary, declaratory, or injunctive relief where such suits arise from unconstitutional actions that execute a governmental policy or custom.  *Monell*, 436 U.S. at 690-91.

A municipality cannot be held liable solely on a respondeat superior theory, i.e., merely because it employs a tortfeasor. *Id.* at 691; *see Lytle v. Carl*, 382 F.3d 978, 988 (9th Cir. 2004). For a successful complaint against a local government, a plaintiff must satisfy any of the following three theories:

1)   The employee acted pursuant to an expressed official policy;

2)   The employee acted according to a long-standing practice or custom; or

3)   The employee acted as a final policy-maker (even in cases where only one constitutional violation occurred).

*See Lytle*, 382 F.3d at 982; *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003).  The policy must come from a deliberate choice by a policy-making official and can be inferred from widespread practice or repeated constitutional violations for which the offending officer received no punishment.  *See Brass v. County of L.A.*, 328 F.3d 1192, 1199 (9th Cir. 2003); *Nadal v. Las Vegas Metro Police Dep't*, 268 F.3d 924, 929 (9th Cir. 2001).

In *Lytle v. Carl*, the plaintiff was a teacher who brought a

1983 action against the superintendent of the school district in which she worked.  The court found that the superintendent had fired the teacher in retaliation for the teacher's criticism of the district.  *Lytle*, 382 F.3d at 981.  The plaintiff did not allege there was an official policy or custom by the school district.  *Id.* at 982.  However, the plaintiff successfully argued that the superintendent was a final policymaker, making the district liable.  *Id.* at 986.  To determine final policymaking authority, the court must find the individual has authority in a particular area or issue.  *Id.* at 983.  In *Lytle*, the court found that the superintendent was not constrained by policies other than his own, and he was not subject to review by anyone within the district, which made the superintendent a final policymaker with respect to teacher employment.  *Id.* at 985-86.

Like *Lytle*, Jercich does not allege that the County officials violated a constitutional right in accordance with any policy or custom of Merced County.  The present complaint is distinguishable from *Lytle* in that there are no facts to support a finding that any of the County Defendants are final policymakers.  Herrell and Graves, the County officials who allegedly conspired to deprive Jercich of his Equal Protection right through their selective prosecution, are more accurately described as subordinate enforcement officers, not policymakers.  Jercich's complaint is insufficient against the County under § 1983.

### III.  Suits Against Government Officials

#### i.   Official Capacity

"Claims against government officials in their official

**27**

capacities are really suits against the governmental employer because the employer must pay any damages awarded." *Butler v. Elle*, 281 F.3d 1014, 1023 (9th Cir. 2002) (internal citations omitted).  The United States Supreme Court has held that official capacity suits generally represent only another way of pleading an action against the entity which employs the agent.  *Wolfe v. Strankman*, 392 F.3d 358, 364-65 (9th Cir. 2004) (*citing Hafer v. Melo*, 502 U.S. 21, 25 (1991)).  An official capacity suit is treated as a suit against the government entity "as long as the [entity] receives notice and an opportunity to respond."  *Ruvalcaba v. City of L.A.*, 167 F.3d, 514, 524 n.3 (9th Cir. 1999) (quoting *Ky. v. Graham*, 473 U.S. 159, 166 (1985)).

Because Jercich's complaint does not allege a County policy or custom deprived him of his constitutional rights, nor does he allege the actions were that of a final policymaker, Jercich's suit against Merced County was dismissed.  Since lawsuits against County officials in their official capacity are actually suits against the County, Jercich's suit against the County Defendants in their official capacity is likewise **DISMISSED.**[7]

---

[7]  County Defendants contend that as a legislator, Kelsey is immune from suit in 1983 actions in her official duties as a legislator. *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1999).  An act is legislative by the nature of the act, and not by motive or intent. *Kaahumanu v. County of Maui*, 315 F.3d 1215, 1219 (9th Cir. 2003) (*citing Bogan*, 523 U.S. at 54).  Courts determine whether an act is legislative by four factors: (1) Does it involve ad hoc decision making or policy formation?; (2) Does it apply to a few individuals, or the public?; (3) Is it formally legislative in character?; (4) Does it bear the hallmarks of legislation? *Id.* at 1220.  The burden of proof lies with the party raising it. *Id.*

Defendants have not established that Kelsey acts as a legislator when she votes on a subdivision proposal.  Jercich's subdivision proposal is more ad hoc than public policy-oriented, is applicable to him primarily or a single property, and is not formally legislative in its character.  The lack of legislative nature does not factor here because Kelsey is not liable under § 1983.

### ii.   Individual Capacity

Individual capacity suits impose personal liability upon a governmental official for actions taken under color of state law. *Dittman v. Cal.*, 191 F.3d 1020, 1027 (9th Cir. 1999) (*citing Graham*, 473 U.S. at 165).  Color of state law means "pretense of law."  *McDade v. West*, 223 F.3d 1135, 1140 (9th Cir. 2000) (citation omitted).  This includes acts by government officers in performing their official duties, whether or not authorized by the local government.  *Id.*  The challenged acts "must bear some similarity to the nature of powers and duties assigned."  *Id.* (citation omitted).

Officials sued in their personal capacity may assert personal immunity defenses such as "objectively reasonable reliance on existing law."  *Pena v. Gardner*, 976 F.2d 469, 473 (9th Cir. 1992) (quoting *Graham*, 473 U.S. at 166-67). Individuals are not immune under qualified immunity if they violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  *See Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Winning an individual capacity suit is a victory against the individual, not the employing entity.  *Cerrato v. S.F. Comty. Coll. Dist.*, 26 F.3d 968, 973 (9th Cir. 1994) (*citing Graham*, 473 U.S. at 166-67).

Jercich's claim against County Defendants in their individual capacity satisfies color of state law.  He alleges that they abused their positions as County officials to deprive him of his Equal Protection right.  To prosecute Jercich for his various code violations, County Defendants use their power as

**29**

County officials, which necessarily indicates that County
Defendants act under color of state law.  County Defendants do
not raise qualified immunity as a defense.

    **2.**   **Conspiracy to Deprive Plaintiff of his Civil Rights**

To prove a conspiracy, Plaintiff must show "an agreement or
'meeting of the minds' to violate constitutional rights."
*Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (citations
omitted).  Each individual does not need to know the plan;
sharing the common purpose of the conspiracy is sufficient.  *Id.*
A private individual may be liable if he conspired with a state
actor.  *Id.* (internal citations omitted).

The elements of a civil conspiracy are (1) the formation and
operation of a conspiracy, (2) wrongful conduct in furtherance of
the conspiracy, and (3) damages arising from wrongful conduct.
*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th
503, 511 (Cal. 1994).  A conspiracy does not stand as an
independent claim, rather it is a legal doctrine to establish
joint liability by the conspirators for the underlying tort. *See*
*Entm't Research Group v. Genesis Creative Group*, 122 F.3d 1211,
1228 (9th Cir. 1997) (*citing Applied Equipment Corp.*, 7 Cal. 4th
at 511).  Each member of the conspiracy must be able to commit
the underlying tort, intend the success of the purpose of the
conspiracy, and all the elements of that tort must be satisfied.
7 Cal. 4th at 511.  If a plaintiff fails to plead the underlying
claim, the corresponding conspiracy claim must also fail.  *See*
*id.* ("It is the acts done and not the conspiracy to do them which
should be regarded as the essence of a civil action.") (internal
citation omitted).

1    In order to show a conspiracy, Plaintiff must first
2  successfully allege the underlying 1983 action.  Jercich must
3  show the deprivation of a secured right under color of state law.
4  Since Jercich has not successfully alleged a 1983 action against
5  any Defendants, the conspiracy claim likewise fails.  Further,
6  Jercich does not show facts that support the existence of a
7  conspiracy among any Defendants, such as the formation and
8  wrongful acts in furtherance of the conspiracy.  Labeling conduct
9  a conspiracy is not enough.  Jercich's claim for conspiracy
10 pursuant to § 1983 fails.

11   Jercich's conspiracy claim cannot implicate 42 U.S.C. §
12 1985(3), conspiracy to interfere with civil rights.  Elements of
13 a 1985(3) claim are: (1) existence of a conspiracy to deprive
14 Plaintiff of equal protection under the law; (2) an act in
15 furtherance of the conspiracy; and (3) a resulting injury.
16 *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1141 (9th Cir. 2000)
17 (*citing Scott v. Ross*, 140 F.3d 1275, 1284 (9th Cir. 1998)).

18   An essential requirement for a 1985(3) claim is that there
19 must be some racial or otherwise class-based "invidious
20 discriminatory animus" for the conspiracy.  *Bray v. Alexandria*
21 *Women's Health Clinic*, 506 U.S. 263, 268-69 (1993) (*citing*
22 *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).  Section
23 1985(3) was not meant to apply to all tortious conspiracies to
24 deprive the rights of another.  *Id*.  Section 1985(3) does not
25 extend to classes beyond race unless that class can show that the
26 government has determined that class members "require and warrant
27 special federal assistance in protecting their civil rights."
28 *Orin v. Barclay*, 272 F.3d 1207, 1217 n.4 (9th Cir. 2001).

**31**

1    Jercich cannot assert a § 1985(3) action because he does not

2    claim a racially-motivated animus, nor that he is a member of any

3    class requiring special federal protection.  Section 1985(3) was

4    not meant to apply to tortious actions such as Jercich's.

5    Further, the complaint does not allege the elements of a 1985(3)

6    action, a race, or class based conspiracy.  Section 1985(3) has

7    no application.  County Defendants' and Ayers' motions to dismiss

8    for conspiracy is **GRANTED WITH LEAVE TO AMEND**.

9                 **3.   Statute of Limitations for 1983 Actions**

10   The United States Supreme Court has held the limitation

11   period for 1983 actions to be the same as the personal injury

12   claim limitation period of the state in which such action is

13   brought.  *Wilson v. Garcia*, 471 U.S. 261, 279 (U.S. 1985).  The

14   9th Circuit has adopted this approach.  *McDougal v. County of*

15   *Imperial*, 942 F.2d 668, 673 (9th Cir. 1991) (statute of

16   limitations for 1983 actions same as that of personal injury

17   actions).  If a state has more than one limitation period for

18   personal torts, the United States Supreme Court has determined

19   that the statute of limitations for general personal injury

20   claims governs for 1983 actions.  *Silva v. Crain*, 169 F.3d 608,

21   610 (9th Cir. 1999) (*citing Owens v. Okure*, 488 U.S. 235, 249-50

22   (1989)).

23   The pertinent state statute is California Civil Procedure

24   Code Section 335.1, which gives a two-year limitation period.

25   Though state law determines the statute of limitations, "federal

26   law determines when a civil rights claim accrues."  *Morales v.*

27   *City of Los Angeles*, 214 F.3d 1151, 1153-54 (9th Cir. 2000).

28   Accrual occurs when "a plaintiff knows or has reason to know of

                                   **32**

1   the injury which is the basis of the action." *Id.* at 1154.

2       The statute of limitations is an affirmative defense.   Fed.

3   R. Civ. P. 8(c).   A defendant raising a statute of limitations

4   defense has the burden of proof.   *Cal. Sansome Co. v. United*

5   *States Gypsum*, 55 F.3d 1402, 1406 (9th Cir. 1995).   In a 1983

6   action, a defendant has the burden of showing that the alleged

7   wrongdoing and injury occurred outside the limitation period.

8   *See id.*

9       County Defendants contend that Jercich's § 1983 selective

10  prosecution claim is barred by the statute of limitations.   While

11  Plaintiff does not allege many dates, Defendants as the moving

12  party must show how the statute of limitations applies.   *Id.*

13  Jercich vaguely alleges that he sought county action in late

14  2002.   Jercich is under an obligation to allege dates or tolling

15  facts that save his cause from the statute of limitations period.

16  It is unclear when the alleged wrongful acts occurred.   The

17  Motion to dismiss on statute of limitations grounds is **GRANTED**

18  **WITH LEAVE TO AMEND.**

19                  **7. <u>Non-Federal Claims</u>**

20  **A.   <u>Supplemental Jurisdiction</u>**

21      Title 28 U.S.C. § 1367(a) provides in pertinent part:

22          "In any civil action of which the district
            courts have original jurisdiction, the
23          district court shall have supplemental
            jurisdiction over all other claims that are
24          so related to the claims in the action within
            such original jurisdiction that they form
25          part of the same case or controversy under
            Article III of the United States
26          Constitution."

27  A court can choose to decline supplemental jurisdiction if "the

28  district court has dismissed all claims over which it had

                              **33**

1   original jurisdiction."   28 U.S.C. § 1367(c)(3) (2000).

2      The United States Supreme Court has interpreted "same case

3   or controversy" as state and federal claims that derive from a

4   "common nucleus of operative facts" such that a plaintiff "would

5   ordinarily be expected to try them all in a single judicial

6   proceeding."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715,

7   725 (1966); *see Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1173

8   (9th Cir. 2002).

9      Jercich brings claims of fraud and conspiracy to commit

10  fraud under California law.  County Defendants and Ayers do not

11  specifically address the fraud claim.  However, they do move to

12  dismiss for failure to state a claim.  Jercich's allegations of

13  conspiracy extend from the fraud committed during the sale to the

14  selective prosecution and denial of his subdivision by the

15  County.  He thus contends a wide-spread conspiracy to defraud him

16  and violate his equal protection rights.  The fraud claim derives

17  from the same case or controversy as the 1983 action.  However,

18  if a § 1983 claim does not exist there will be no federal subject

19  matter jurisdiction and no reason for the court to retain this

20  action.

21  **B.**   **<u>Fraud</u>**

22     To successfully plead fraud, Plaintiff must show a 1) false

23  representation, 2) knowledge of its falsity, 3) intent to

24  defraud, 4) justifiable reliance, and 5) damages.  *Moore v.*

25  *Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996) (quotations

26  omitted).  Pursuant to Rule 9(b) of the Federal Rules of Civil

27  Procedure, "[i]n all averments of fraud . . . the circumstances

28  constituting fraud . . . shall be stated with particularity."

**34**

The fraud allegations must be specific enough to give defendant notice of the particular misconduct so that the defendant can defend against it. *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (*citing Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)). This includes time, place, and nature of the actions, and why the actions are false. *Decker v. Glenfed, Inc. (In re Glenfed, Inc., Sec. Litig.)*, 42 F.3d 1541, 1548 (9th Cir. 1994).

Plaintiff accuses Ayers and the County Defendants of fraud. He fails to state any specifics regarding when or how the fraud was perpetrated by Fagundes, the County, and Ayers or what constitutes the fraud. Plaintiff's only mention of Ayers and the County is in paragraphs 9 and 12 of the Complaint, a conclusory allegation of conspiracy to defraud Plaintiff. This does not meet the more particular pleading requirements of Rule 9(b).

The motion to dismiss for failure to state a claim with regard to the fraud claim is **GRANTED WITH LEAVE TO AMEND.**

**C.   Conspiracy to Commit Fraud**

Civil conspiracy elements are (1) the formation and operation of a conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from wrongful conduct). *See Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 511 (Cal. 1994). Conspiracy is a legal doctrine to establish joint and vicarious liability by the conspirators for the underlying tort. *See Entm't Research Group v. Genesis Creative Group*, 122 F.3d 1211, 1228 (9th Cir. 1997) (*citing Applied Equipment Corp.*, 7 Cal. 4th at 511). Each member of the conspiracy must be able to commit the underlying tort, and all

35

1  the elements of that tort must be satisfied.  7 Cal. 4th at 511.

2  If Plaintiff fails to plead a claim for fraud, the corresponding

3  conspiracy claim must also fail.  *See id.* ("It is the acts done

4  and not the conspiracy to do them which should be regarded as the

5  essence of a civil action.") (citation omitted).

6       Jercich failed to allege fraud with sufficient particularity

7  as required by Rule 9(b).  Since Jercich failed to show the

8  underlying fraud action, there is no liability for conspiracy to

9  commit fraud.  Motion to dismiss for conspiracy to commit fraud

10 is **GRANTED WITH LEAVE TO AMEND.**

11 **D.    Emotional Distress**

12      To state a claim for intentional infliction of emotional

13 distress, under state law, a plaintiff must allege 1) extreme and

14 outrageous conduct by the defendant, with the intent or reckless

15 disregard of the probability of causing emotional distress, 2)

16 plaintiff suffered severe emotional distress and 3) that

17 defendant was the cause of the emotional distress.  *Ess v.*

18 *Eskaton Properties, Inc.,* 97 Cal. App. 4th 120, 129 (Cal. Ct.

19 App. 2002).

20      To state a claim for negligent infliction of emotional

21 distress under state law requires that a plaintiff show 1)

22 serious emotional distress, 2) actually and proximately caused by

23 3) wrongful conduct 4) by a defendant who should have foreseen

24 that the conduct would cause such distress.  *Austin v. Terhune*,

25 367 F.3d 1167, 1172 (9th Cir. 2004).  It is well settled that

26 negligent infliction of emotional distress is not an independent

27 tort; rather it is the tort of negligence to which the duty

28 element applies.  *Marlene F. v. Affiliated Psychiatric Med.*

**36**

*Clinic, Inc.,* 48 Cal. 3d 583, 588 (Cal. 1989); *Friedman,* 107 Cal. App. 4th at 464.

Where injury such as mental and emotional distress is caused by the constitutional violation, that injury is compensable under § 1983. *Borunda v. Richmond*, 885 F.2d 1384, 1389 (9th Cir. 1988); *Carey v. Piphus*, 435 U.S. 247, 263-264 (1978). It is not a stand alone federal claim. Awards for emotional distress damages require proof that such injury actually occurred. *See Carey*, 435 U.S. at 264.

Jercich alleges that he suffered emotional distress from the Equal Protection violation and the fraud. The only facts he alleges describe a tractor incident in July 2005. (Doc. 1-1, Complaint ¶ 13). However, that incident does not implicate County Defendants or Ayers, as Jercich was hurrying to meet the County's disposal deadline, the County did not cause the tractor to allegedly nearly crush him. The facts do not show how County Defendants or Ayers are responsible for the actions of the tractor. Even if Defendants caused a constitutional deprivation, that deprivation did not cause the alleged injury Jercich suffered from the tractor. Nor do the facts rise to the level of outrageous conduct required by state law. The complaint fails to state a claim for emotional distress. Defendants' motion to dismiss Jercich's emotional distress claims is **GRANTED WITH LEAVE TO AMEND.**

### 8. <u>Conclusion</u>

(1) Ayers' motion to dismiss pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction is **DENIED.**

(2) County Defendants' and Ayers' motions to dismiss

1   pursuant to Rule 12(b)(5) for insufficient service of process are

2   **GRANTED WITH LEAVE TO AMEND.**

3       (3) County Defendants' and Ayers' motions to dismiss

4   pursuant to Rule 8 and for more definite statement pursuant to

5   Rule 12(e) are **GRANTED WITH LEAVE TO AMEND.**

6       (4) Defendants motion to dismiss on Rule 8(e)(1) grounds is

7   **GRANTED WITH LEAVE TO AMEND.**

8       (5) Ayers' motion to dismiss for failure to join a party

9   pursuant to Rule 12(b)(7) is **DENIED.**

10       (6) County Defendants' and Ayers' motions to dismiss for

11   failure to state a claim pursuant to Rule 12(b)(6) regarding the

12   1983 action are **GRANTED WITH LEAVE TO AMEND.**

13       (7) County Defendants' and Ayers' motion to dismiss for

14   conspiracy pursuant to a 1983 action is **GRANTED WITH LEAVE TO**

15   **AMEND.**

16       (8) County Defendants' motion to dismiss on statute of

17   limitation grounds for a 1983 action is **GRANTED WITH LEAVE TO**

18   **AMEND.**

19       (9) County Defendants' and Ayers' motions to dismiss

20   regarding the fraud claim are **GRANTED WITH LEAVE TO AMEND.**

21       (10) County Defendants' and Ayers' motion to dismiss for

22   conspiracy to commit fraud are **GRANTED WITH LEAVE TO AMEND.**

23       (11) Defendants' motion to dismiss Jercich's emotional

24   distress claims is **GRANTED WITH LEAVE TO AMEND**

25       Any amended complaint shall be granted within twenty (20)

26   days of the date of service of this decision.

27   IT IS SO ORDERED.

28   **Dated:   December 18, 2006**         **/s/ Oliver W. Wanger**

dd0l0                              UNITED STATES DISTRICT JUDGE